IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES L. MILLINER, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | No. 4:16 CV 456 RWS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before me on the motion of James L. Milliner ("Milliner") to vacate, set aside, or correct a sentence by a person in federal custody pursuant to 28 U.S.C. § 2255. In his motion, Milliner alleges that his trial counsel was constitutionally ineffective. For the reasons below, I find that Milliner's claims are without merit. As a result, his motion will be denied.

**I.    Background**

On, June 23, 2011, Milliner was indicted for conspiracy to distribute a mixture or substance containing cocaine base in violation of Title 21, United States Code, Sections 841(a) and 846. Milliner's first trial on this charge ended in a mistrial. On September 24, 2013, after a second trial, the jury convicted Milliner of conspiracy as charged.

The charge against Milliner stems from his and his co-conspirators, Charles McRoberts, Ernest Swan, and Michael Rogers', continuous sales of crack cocaine beginning in 2007. The following evidence was presented at Milliner's trial. McRoberts and Swan purchased powder cocaine and converted it into crack cocaine. Milliner, McRoberts, Swan, and Rogers packaged the crack cocaine in .2 gram and .5 gram bags for sale. Rogers sold the crack cocaine at a pavilion at 102 Highway J in Wright City, Missouri. Milliner "held" the crack cocaine for Rogers while Rogers sold it. Rogers was arrested in October of 2010. Halesha Bradshaw replaced Rogers and began selling crack cocaine at the pavilion. Milliner would provide Bradshaw with transportation to the pavilion. Bradshaw stopped selling crack cocaine in November 2010. Christopher Adams replaced Bradshaw and began selling crack cocaine for the conspiracy. Adams was replaced by Antwaun Nunn. Milliner's involvement in the sale of crack cocaine continued until he was arrested in March 2011.

In sum, the evidence was presented that Milliner accompanied his co-conspirators to Kansas City to purchase powder cocaine, helped package the crack cocaine for sale, provided crack cocaine to Rogers on at least ten occasions, provided surveillance for Bradshaw by watching for police presence in the area, picked up drugs and drug proceeds from the front-line sellers, and provided Bradshaw with transportation to and from the pavilion where she sold the crack

cocaine. (Doc. # 653, Tr. Vol. 1, pp. 137-146, 196); (Doc. # 654, Tr. Vol. 2, pp. 27-29, 68-81) The members of the conspiracy sold in excess of 280 grams of crack cocaine. (Doc. # 655, Tr. Sent., p. 11) Based on this evidence, a jury convicted Milliner of conspiracy to distribute a mixture or substance containing cocaine base.

## II. Grounds for Relief

In Milliner's 28 U.S.C. § 2255 motion, he alleges the following grounds for relief:

He was denied effective assistance of counsel in violation of the Sixth Amendment when his counsel:

a) failed to call Charles McRoberts to testify;
b) failed to "solicit the truth" from Michael Rogers;
c) failed to question Michael Rogers and Halesha Bradshaw as to the purpose of the trip to Texas;
d) failed to establish on cross-examination that Milliner was not providing Bradshaw rides to sell crack cocaine;
e) failed to question Bradshaw about Milliner not being present during the cooking and packaging of the crack cocaine;
f) and counsel's cumulative errors constitute ineffective assistance of counsel.

## III. Standard for § 2255 Relief

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in

3

excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255; Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post- conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."). A motion pursuant to § 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis v. United States, 417 U.S. 333, 343 (1974).

"Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). One exception arises when there is a "miscarriage of justice," but the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence, and the Supreme Court has not extended the exception to situations beyond involving a petitioner's actual innocence." Id. (citations omitted). "[T]he Court has emphasized the narrowness of the exception and has expressed its desire that it remain rare and available only in the extraordinary case." Id. (citations omitted). Section 2255 ordinarily "is not available to correct errors which could

have been raised at trial or on direct appeal." Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S.614, 622 (1998) (citations omitted).

IV. Analysis

    **A. Milliner Received Effective Assistance Of Counsel**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. A claim of ineffective assistance of counsel is raised in a § 2255 proceeding, rather than on direct appeal. See United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). To prevail on a claim alleging ineffective assistance of counsel, the defendant must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). "First, the defendant must first show that the counsel's performance was deficient." Id. at 687. This requires the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." Id. A defendant can demonstrate that counsel's performance was deficient where "counsel's representation fell below an objective standard of reasonableness." Id. at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. If the defendant fails to show that his counsel was deficient, the court need not address the second prong of the Strickland test. See Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002).

To meet the second prong of Strickland, the defendant must demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Eighth Circuit has described the Strickland test as follows: the questions a court must ask are "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000). When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Considered objectively, counsel's performance is gauged by "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" Fields, 201 F.3d at 1027 (quoting Strickland, 466 U.S. at 688). "[W]e avoid making judgments based on hindsight." Id. A reviewing court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively. See Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002).

### a. Counsel Was Not Ineffective In Failing To Call Charles E. McRoberts, Jr. To Testify

Charles McRoberts was the leader of the conspiracy to sell crack cocaine. In support of Milliner's present motion to vacate, McRoberts provided an affidavit stating that he was willing to testify at Milliner's trial that Milliner (McRoberts'

"cousin, brother, and best friend") was not in the conspiracy and that the rides Milliner provided to Bradshaw were "not involved in the business of Ms. Bradshaw." (Doc # 1, Ex. 1McRoberts Aff.) Milliner contends his counsel was ineffective for failing to call McRoberts to testify because McRoberts' testimony would impeach the prosecution's witnesses. However, the proposed testimony of McRoberts stood in stark contrast to McRoberts' signed plea agreement and sworn oral plea in which he unequivocally stated that Milliner was a member of the conspiracy.

In his affidavit McRoberts states that he contacted Preston Humphrey, Milliner's attorney at his first trial (which ended in a mistrial), to offer his testimony regarding Milliner's innocence. In preparation for trial, Humphrey issued a Writ of Habeas Corpus ad Testificandum for McRoberts on December 19, 2012. McRoberts was transferred to an Illinois jail from federal custody to potentially testify at Milliner's first trial. In his affidavit McRoberts states that he called Humphrey from jail and asked why he had not been brought to St. Louis to testify at trial. McRoberts states that Humphrey told McRoberts to contact his attorney. When McRoberts contacted his attorney he was told the Assistant United States Attorney would prosecute McRoberts for perjury and obstruction of justice if he testified at Milliner's trial contrary to his plea agreement. The Assistant United State Attorney confirmed in her response brief to Milliner's motion to

vacate that McRoberts would have been charged with perjury if he testified at trial and contradicted his sworn testimony at his plea hearing.

Ultimately, Humphrey never called McRoberts to testify at Milliner's first trial. McRoberts states in his affidavit that Milliner's attorney for his second trial, Sean M. Vicente, never contacted McRoberts. In his motion to vacate Milliner states that he made Vicente aware of McRoberts' proposed testimony but Vincente failed to call McRoberts to testify at the second trial.

The Eighth Circuit has held that "a reasoned decision by counsel to not call a witness is a virtually unchallengeable decision of trial strategy, in part because there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences." Rodela-Aguilar v. United States 596 F.3d 457, 464 (8th Cir. 2010). Here, McRoberts had previously stated under oath that Milliner was part of the drug conspiracy. If McRoberts testified to the contrary at Milliner's trial he would have been committing perjury. The prosecution would have highlighted this point to the jury. The decision of Milliner's counsel to not call McRoberts to testify was a reasonable trial strategy. As a result, Milliner's claim that he received ineffective assistance of counsel due to counsel's failure to call McRoberts as a witness fails to establish grounds for relief.

Moreover, if a counsel's assistance is found to be constitutionally ineffective a defendant must also show that he was prejudiced by counsel's error. Strickland at 690. Prejudice requires a reasonable probability that, but for counsel's error, the result would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Even if McRoberts' testimony had been presented to the jury, there would not be a reasonable probability that the result would have been different. Recorded telephone calls between Bradshaw and Milliner were played at the trial. In those telephone calls Bradshaw and Milliner discussed police presence in the area of the pavilion where Bradshaw was selling drugs and discussed Milliner picking up drugs or drug proceeds from Bradshaw. (Doc. # 654, Tr. Vol. 2, pp. 74, 79-80)

Drug Enforcement Administration Agent Ryan Lawyer testified that Milliner attended a meeting with his lawyer, the Assistant United States Attorney, and Agent Lawyer at which Milliner made a proffer regarding his participation in the conspiracy. (Doc. # 654, Tr. Vol. 2, p. 32) Milliner admitted that on "one occasion" he packed the crack cocaine, that on "one occasion" he provided crack cocaine to Nunn to sell, and that on "one occasion" he received drug money from Bradshaw. (Doc. # 654, Tr. Vol. 2, pp. 35-36, 50)

Co-conspirator Michael Rogers also provided ample evidence that Milliner participated in the conspiracy. He testified that Millner accompanied him to

purchase powder cocaine in Kansas City, Milliner helped package the crack cocaine, and held the crack cocaine for Rogers to sell. (Doc. # 653, Tr. Vol. 1, pp. 137-146, 196) All of this evidence would overwhelmingly support Milliner's conviction even if McRoberts' had testified. The omission of McRoberts' did not undermine confidence in the jury's verdict. (Id. at pp. 35-36) Milliner was not prejudiced by counsel's decision to not call McRoberts to testify at trial. As a result, this claim for relief fails.

### b. Counsel Was Not Ineffective For Failing To "Solicit The Truth" From Michael Rogers

Co-conspirator Michael Rogers testified at trial that Milliner helped him package crack cocaine in July 2007. (Doc. # 653, Tr. Vol. 1, pp. 143-144) Milliner claims this testimony was false and that his counsel was ineffective for failing to "solicit the truth" from Rogers. Milliner claims that he could not have packaged crack cocaine with Rogers in July 2007 because Milliner was in custody in July 2007 and he was not released until September 7, 2007.[1] (Pet. Doc. #1 at 5) Milliner bases this claim on a statement in the Presentence Report (PSR) in this matter. Milliner misreads the PSR. The PSR notes that Milliner was paroled from the Missouri Department of Corrections custody on January 6, 2006. The PSR indicates he was paroled to a detainer but does not specify any further information.

---

[1] Milliner incorporates part of his claim that counsel was ineffective for failing to question Rogers and Bradshaw as to the purpose of the Texas trip into this claim. The part of Milliner's claim pertaining to the trip to Texas is addressed in his next claim.

The PSR goes on to note that Milliner was given a "conditional release discharge" on September 7, 2007. Milliner asserts that the conditional release discharge notation indicates that he was in custody in July. (PSR p. 11) However, the conditional release notation was not a physical discharge from custody, it was a paper discharge of Milliner from parole.

Moreover, the PSR notes two municipal citations issued to Milliner during the summer of 2007. (Id. at p 12) Milliner was cited for disorderly conduct on July 24, 2007 and disturbing the peace on August 10, 2007. Id. Both of these citations show that Milliner was not in prison during this time period. There is no record of Milliner being in custody in July 2007. To the contrary, the evidence of the municipal ordinance violations establishes that Milliner was not in custody during July 2007. As a result, Milliner's claim that his counsel was ineffective for failing to "solicit the truth" form Rogers about packaging crack cocaine in July 2007 is without merit.

### c. Counsel Was Not Ineffective For Failing To Question Rogers And Bradshaw As To The Purpose Of The Trip To Texas

Rogers testified that members of the conspiracy would travel to Kansas City and to Texas to purchase powder cocaine. (Doc. # 653, Tr. Vol. 1 p.p. 138, 146) He testified that Milliner accompanied the members two times to Kansas City and one time to Texas. (Id.)

Bradshaw testified that she drove members of the conspiracy to Kansas City to buy powder cocaine. (Doc. # 654, Tr. Vol. 2 p.p. 62) She testified that Milliner did not accompany the members to Kansas City when she drove there. (Id. at p. 63) Bradshaw testified that she traveled with the members to Texas in 2009 and 2010 to purchase powder cocaine. (Id. at 64-65) She testified that Milliner accompanied her and the other members one time to Texas but she was not sure of the purpose of that trip. She testified that there were "no drugs at that point" that she knew about. (Id. at 65)

It appears from the record that Rogers and Bradshaw are both referring to the same single trip Milliner made to Texas. Milliner contends that his counsel was ineffective for failing to cross-examine Rogers and Bradshaw about Milliner's trip to Texas. Milliner asserts that if his counsel had questioned Rogers and Bradshaw about the trip it would have revealed that the trip was not drug related.

At trial Milliner's counsel cross examined DEA Agent Ryan Lawyer about purpose of Milliner's trip to Texas. Agent Lawyer testified that Milliner stated in his proffer that he went on the trip to buy clothes. (Id. at 56)

Milliner's counsel did not need to cross-examine Bradshaw about the trip to Texas because she already testified on direct examination that to her knowledge Milliner's trip to Texas did not involve drugs. Rogers did not specifically testify that Milliner knew that the purpose of the Texas trip was to purchase powder

13

cocaine. Milliner's counsel presumably chose not to question Rogers about the Texas because Rogers never specifically testified that Milliner knew about the purpose of the trip. Instead, Milliner's counsel chose to question Agent Lawyer about the trip.

Counsel's choice to use a different strategy to cross-examine witnesses than Milliner now asserts should have been followed does not establish an ineffective assistance claim. Walker v. Lockhart, 852 F.2d 379, 382-83 (8th Cir. 1988) ("Absent extraordinary circumstances, a habeas petitioner is bound by the strategic decisions of counsel even when made without consulting the petitioner.") Moreover, a court should avoid making judgments based on hindsight when reviewing counsel's performance, Fields 201 F.3d at 1027.

Even if counsel was deficient in failing to explore the trip to Texas more thoroughly, Milliner was not prejudiced. Regardless of what happened on the trip to Texas, the jury heard Rogers' testimony that Milliner was involved in two trips to Kansas City to purchase powder cocaine in addition to other evidence which supports Milliner's conviction. As a result, this claim fails to establish grounds for relief.

### d. Counsel Was Not Ineffective For Failing To Establish On Cross-Examination That Milliner Was Not Providing Bradshaw Rides To Sell Crack Cocaine

Milliner contends that the rides he provided to Bradshaw to the open air pavilion were to Roberts Marketing, a legitimate business, and not for the purpose of crack cocaine sales. Bradshaw had testified at Milliner's trial that she was at the pavilion to sell crack cocaine. She also testified that Milliner was present when she and McRoberts discussed her selling crack cocaine at the pavilion, Milliner acted as a lookout, Milliner would give her rides to the pavilion, and that Milliner would occasionally pick up money from the drug sales at the end of the day. (Doc. # 654, Tr. Vol. 2, pp. 65-70) In addition, the prosecution presented several video tapes of Milliner dropping Bradshaw off at the pavilion. (Id. at pp. 75-76, 80) Milliner's claim that his counsel was ineffective for failing to attempt to solicit testimony from Bradshaw that Milliner did not know she was selling crack at the pavilion when he gave her rides is without merit. Bradshaw testified unequivocally about Milliner's knowledge of her activity. The video tape evidence reinforced Bradshaw's testimony. As a result, this claim does not establish grounds for relief.

### e. Counsel Was Not Ineffective For Failing To Question Bradshaw About Milliner Not Being Present During The Cooking And Packaging Of The Crack Cocaine

Rogers testified that Milliner was present when the powder cocaine was cooked into crack and that Milliner was responsible for packaging the crack cocaine. (Doc. # 653, Tr., Vol. 1, pp. 139, 142) Bradshaw testified that Rogers was the one packaging the crack cocaine after the Kansas City trips. (Doc. # 654, Tr., Vol. 2, pp. 63-64) She also testified that she did not know who was cooking the powder cocaine into crack. Milliner faults his counsel for failing to cross-examine Bradshaw and get her to testify that Milliner was not present for any cooking or packaging of the crack cocaine. Other than is own speculation, there is no factual basis to believe that Bradshaw would testify that Milliner was never present at other times when crack cocaine was being cooked or packaged.

Even if Bradshaw would have provided such testimony, the evidence in the form of video recordings, telephone call recordings, and other co-conspirators' testimony implicate Milliner in providing rides to Bradshaw to the place where the crack cocaine was sold (Id. at p. 75). In addition, the evidence indicated that Milliner served as a lookout for police presence (Id. at pp. 68-69), that Milliner handled drug sale proceeds (Id. at p. 79), that Milliner held the crack cocaine for sale (Doc. # 653, Tr., Vol. 1, p. 140), and that Milliner provided additional crack cocaine to Rogers to sell on several occasions. (Id. at pp. 145-46) Based on this

16

evidence the confidence in the outcome of the trial has not been undermined. As a result, Milliner's claim that counsel was ineffective for failing to question Bradshaw about Milliner not being present during the cooking and packaging of the crack cocaine fails to establish that counsel's omission was prejudicial to Milliner.

### f. The Cumulative Errors Of Counsel Were Not Ineffective[2]

Milliner asserts that counsel's cumulative errors amount to ineffective assistance of counsel. A section 2255 petitioner cannot establish grounds for relief based on a claim of cumulative errors. Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002). (Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively). Each of Milliner's claims has been individually examined and cannot be considered together. As a result, Milliner's claim that counsel's cumulative errors constitute ineffective assistance of counsel is without merit.

## B. An Evidentiary Hearing Is Not Warranted

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo–Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation

---

[2] Milliner used ground five twice and so the second ground five has been treated as a separate ground six.

marks omitted). An evidentiary hearing need not be held if Milliner's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). Because the record conclusively shows that Milliner is not entitled to relief as a matter of law, I will not hold an evidentiary hearing in the matter.

### C. Certificate Of Appealability

For this Court to grant a certificate of appealability, Milliner must make a substantial showing that his constitutional right was denied. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Id. For the reasons set forth above, I find Milliner has not made such a showing. As a result, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of James L. Milliner to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for an evidentiary hearing is **DENIED.**

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Milliner has not made a substantial showing of the denial of a federal constitutional right.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2018.